**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DOLLINA VINES, | : | |
| Plaintiff, | : | CASE NO. 3:25-cv-01535 (MPS) |
| | : | |
| v. | : | |
| | : | |
| TRINA SEXTON, et al., | : | |
| Defendants. | : | November 3, 2025 |
| | : | |

---

**INITIAL REVIEW ORDER**

Plaintiff Dollina Vines, an unsentenced inmate incarcerated at York Correctional Institution ("York"), filed a complaint under 42 U.S.C. § 1983, naming six defendants. Compl., ECF No. 1 at 2–3. The plaintiff alleges these defendants violated her constitutional rights by assaulting her, failing to provide medical treatment to her after the assault, and placing her in a "dry cell" under unsanitary conditions. *See id.* ¶¶ 3–14. The plaintiff seeks monetary damages. *Id.* at 8.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless of whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F.Supp.2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)).

The Court has thoroughly reviewed all factual allegations in the plaintiff's complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on

this initial review, the Court orders as follows.

## I.    <u>Allegations</u>

While the Court does not set forth all the facts alleged in the plaintiff's complaint (ECF No. 1), it summarizes her basic factual allegations here to give context to this ruling.

The plaintiff entered York as a pretrial detainee on June 30, 2025.[1] Less than one week later, on July 4, 2025, the plaintiff reported knee injuries to Correctional Officers Mercado and Francis and asked to see a nurse. *Id.* ¶ 1. When Mercado asked the plaintiff to show Mercado the injuries, the plaintiff inserted her leg through the "feeding trap" of the cell door. *Id.* ¶ 2. As the plaintiff did so, Mercado asked the plaintiff about an object in the plaintiff's cell. *Id.* Mercado then moved closer to inspect the object. *Id.* ¶ 3. The plaintiff reached to her left to show Mercado that the object was a wad of toilet paper. *Id.* As the plaintiff reached for the toilet paper, Francis began beating, punching, and pulling on the plaintiff's leg that was still extended through the feeding trap. *Id.* ¶¶ 3–4. Mercado then "joined in" and bent the plaintiff's arm. *Id.* ¶ 4. The plaintiff screamed that Mercado was going to break her arm and told Mercado to let it go. *Id.* Prison staff called a "code." *Id.* ¶ 5. Officers approached as the plaintiff's arm was still hanging out of the "trap." *Id.* Officer Howe kicked the trap "without provocation or a direct order." *Id.* ¶ 5. The plaintiff describes the "melee" as "like a gang fight." *Id.*

The plaintiff injured her "knee, lower leg, thigh, hip, arm, shoulder[,] and neck" during

---

[1] Plaintiff entered the Department of Correction ("DOC") on June 30, 2025, and remains an unsentenced prisoner at York. *See* DOC, *Offender Information Search*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=292572 (last visited October 9, 2025). The Court may take judicial notice of this website. *See, e.g., Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC inmate locator).

the altercation with correctional officers. *Id.* ¶ 6. Medical staff did not assess the plaintiff despite her "many oral and written complaints." *Id.* The plaintiff lost range of motion in her arm, which made getting out of bed difficult. *Id.* The plaintiff wrote to medical staff multiple times about abdominal pain, headaches, migraines, and rectal discomfort. *Id.* ¶ 14. At the time of filing, the plaintiff had yet to see medical staff for her injuries or receive any written response to her complaints. *Id.* ¶ 7.

Prison officials placed the plaintiff in a "dry cell" on July 29, 2025. *Id.* ¶ 8. The dry cell had no running water. *Id.* Prison staff gave the plaintiff a safety gown, one blanket, and a bedpan. *Id.* ¶ 9. The plaintiff spent the first day in the dry cell without toilet paper. *Id.* Feces and urine from the adjoining cell were flushed into her toilet. *Id.* Prison officials did not permit the plaintiff to shower for fifteen days. *Id.* ¶ 10. Plaintiff could not wash her hands or brush her teeth for the same period. *Id.* Plaintiff did not defecate for nine days. *Id.* The lieutenant refused to empty the plaintiff's bedpan. *Id.* The bedpan full of urine remained in Plaintiff's feeding trap all day. *Id.* Prison officials gave the plaintiff 16-to-24 ounces of water to drink each day. *Id.* ¶ 12. The correctional officers often tossed out the milk or juice from the plaintiff's breakfast. *Id.* The plaintiff was not allowed to save any food or drink in her cell for later consumption. *Id.* Prison officials did not permit the plaintiff sanitary napkins. *Id.* ¶ 13. The plaintiff menstruated for one week "without pads, tampons, or diapers." *Id.* As a result, Plaintiff's gown was soiled and never exchanged for a clean one. *Id.* Feces from the toilet was smeared on Plaintiff's mattress when officers searched her cell. *Id.*

The warden, captain, and deputy wardens disregarded the plaintiff's complaints when touring her unit. *Id.* ¶ 11. The warden told the plaintiff that she would think about letting the

plaintiff out, but instead extended the Plaintiff's stay in the dry cell. *Id.*

## II.  Discussion

"*Pro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). When liberally construed, the plaintiff's complaint most strongly suggests claims for excessive force and failure to intervene, deliberate indifference to serious medical needs, and unconstitutional conditions of confinement. The Court discusses each claim in turn.

### A. Excessive Force and Failure to Intervene

The complaint suggests an excessive force claim related to correctional officers assaulting the plaintiff when she sought medical attention for her knee. Because the plaintiff was a pretrial detainee when this allegedly happened, *see* note 1, *supra*, her excessive force claim is governed by the Fourteenth Amendment, rather than the Eighth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Courts must be mindful that the use of force is sometimes necessary "to preserve internal order and discipline and to maintain institutional security." *Id.* at 397 (internal quotation marks omitted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). But an inmate may still prevail in a use-of-force claim where the force used is "excessive in relation to that purpose." *Id.* at 398 (quoting *Bell*, 441 U.S. at 561) (internal quotation marks omitted). A plaintiff may thus show either that the actions taken against her were "not rationally related to a legitimate nonpunitive governmental purpose," or that they "appear[ed] excessive in relation to" a nonpunitive purpose. *Id.* (internal quotation marks

4

omitted) (quoting *Bell*, 441 U.S. at 561).

"Prison officials can also be held liable under section 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Huertas v. Guadarrama*, No. 3:25CV118 (SRU), 2025 WL 1868045, at *5 (D. Conn. July 7, 2025) (internal quotation marks and citation omitted). "To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) the officer knew that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene.'" *Deegan v. Doe #1*, No. 3:19CV1356 (MPS), 2019 WL 5964816, at *3 (D. Conn. Nov. 13, 2019) (internal quotation marks, citation, and brackets omitted). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

The plaintiff alleges that Francis beat, punched, and pulled on the plaintiff's leg when the plaintiff inserted her leg through the feeding trap to show Mercado injuries to the plaintiff's knee. Compl., ECF No. 1 ¶¶ 2–4. Mercado "joined in" to bend the plaintiff's arm. *Id.* ¶ 4. Howe subsequently kicked the trap containing Plaintiff's arm "without provocation or a direct order." *Id.* ¶ 5. Because these actions were seemingly unrelated to "a legitimate nonpunitive governmental purpose," or were "excessive in relation to" a nonpunitive purpose, the plaintiff has alleged sufficient facts to state Fourteenth Amendment claims for excessive force and failure

to intervene against Francis, Mercado, and Howe.[2] *See Gulley v. Ogando*, No. 3:19-CV-612 (SRU), 2019 WL 2502753, at *3–4 (D. Conn. June 17, 2019) (permitting excessive force and failure to intervene claims to proceed where plaintiff alleged that correctional officers repeatedly punched and choked inmate while applying restraints and other officers did nothing to stop it).

### B. <u>Deliberate Indifference to Serious Medical Needs</u>

The complaint also suggests a deliberate indifference to serious medical needs claim related to medical staff's denial of medical treatment after officers assaulted the plaintiff and after she was placed in a dry cell.

A pretrial detainee may bring a claim for deliberate indifference to serious medical needs under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "To state such a claim, a plaintiff must plead facts showing that she had a serious medical condition and that it was met with deliberate indifference." *Bruno v. City of Schenectady*, 727 Fed. App'x 717, 720 (2d Cir. 2018) (brackets, internal quotation marks, and citation omitted). A "serious medical condition" is one that "is, in objective terms, sufficiently serious—that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death,

---

[2] Mercado and Howe are not listed as defendants in the caption or the list of defendants. *See* Compl., ECF No. 1 at 1–3. As such, a court will generally not "consider them to be defendants" because Federal Rule of Civil Procedure Rule 10(a) required parties to be listed in the caption. *Williamson v. Naqvi*, No. 3:19CV4(MPS), 2019 WL 2718476, at *1 (D. Conn. June 27, 2019); Fed. R. Civ. P. 10(a). But "courts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *3 n.3 (D. Conn. May 8, 2020) (internal quotation marks and brackets omitted) (quoting *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 313CV1594 (BKS/DEP), 2016 WL 1466545, at *26 (N.D.N.Y. Apr. 14, 2016) (collecting cases)); *see, e.g., Torres v. Reis*, No. 3:22-CV-1008 (VAB), 2023 WL 2837683, at *5 n.5 (D. Conn. Apr. 7, 2023) (considering prison officials who were not named in caption or listed as defendants to be defendants for purposes of initial review because it was clear that the plaintiff wished to proceed on a claim against them). Because the complaint suggests that the plaintiff intended to sue Mercado and Howe, the Court will permit the plaintiff to bring her excessive force and failure to intervene claims against these individuals.

degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks and citation omitted).

If a plaintiff establishes that she had a serious medical need, the plaintiff must establish the subjective element: that a particular defendant was deliberately indifferent to that need. *See Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87 (emphasis original). "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution .... The violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

The Court will assume for purposes of initial review that the injuries to the plaintiff's "knee, lower leg, thigh, hip, arm, shoulder[,] and neck" sustained during the staff assault, Compl., ECF No. 1 ¶ 6, satisfy the objective element. *See McNamee v. Schoharie Cnty. Jail*, No. 906-CV-1364 LEK/GHL, 2008 WL 686796, at *10 (N.D.N.Y. Mar. 10, 2008) (assuming that "vague 'head injury' that Plaintiff suffered" during inmate assault was sufficiently serious). But the plaintiff has alleged insufficient facts to satisfy the subjective element.

The plaintiff alleges that medical staff did not assess her despite "many oral and written complaints," and that she never received medical treatment for her injuries or any written response to her complaints. Compl., ECF No. 1 ¶ 6. But if medical staff did not see the plaintiff

or respond to her complaints, the plaintiff has not alleged facts suggesting that any defendant "*knew* that failing to provide the complained of medical treatment would pose a substantial risk to [her] health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles*, 925 F.3d at 87 (emphasis original).

Even if the Court could infer this from the complaint, the plaintiff has failed to allege that any specific prison official (named or unnamed) ignored the plaintiff's request for medical treatment. *See Westry v. City of Waterbury*, No. 3:22CV686 (MPS), 2023 WL 3259878, at *4 (D. Conn. May 4, 2023) (dismissing deliberate indifference claim because plaintiff did not allege the involvement of any defendant in denying medical care to the plaintiff after his arrest); *Gonzalez v. Yepes*, No. 3:19-CV-00267 (CSH), 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) (nothing that, "[a]s a corollary of the personal involvement requirement, complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim" (internal quotation marks omitted)).

Plaintiff names only one person from the medical staff as a defendant: OBGYN Jamilla Hope. Compl., ECF No. 1 at 3. But the plaintiff does not allege that Hope ignored the plaintiff's requests for medical treatment or otherwise mention Hope in the body of the complaint. Even if plaintiff had alleged that Hope failed to respond to the plaintiff's requests for medical treatment, "failure to respond to a complaint does not demonstrate personal involvement." *Wright v. Cooke*, No. 3:20-CV-1284 (SVN), 2023 WL 5891082, at *10 n.6 (D. Conn. Sept. 11, 2023), *aff'd sub nom. Wright v. Martin*, No. 23-7762-PR, 2025 WL 1091221 (2d Cir. Apr. 8, 2025). Accordingly,

this claim must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

      **C. <u>Conditions of Confinement</u>**

      The complaint last suggests a conditions-of-confinement claim related to the conditions of the "dry cell" into which prison officials placed the plaintiff after she was assaulted.

      The Eighth Amendment requires prison officials to provide "humane conditions of confinement," which include "tak[ing] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). But because the plaintiff was a pre-trial detainee when she was injured, *see* note 1, *supra*, her claim "of unconstitutional conditions of confinement [is] governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment." *Darnell*, 849 F.3d at 29.

      A pretrial detainee who asserts a conditions-of-confinement claim under the Fourteenth Amendment must allege facts satisfying two components. First, the plaintiff must allege facts showing that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[.]" *Id.* To determine whether a condition was "sufficiently serious," the Court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis original). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

Second, the plaintiff must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Id*. at 36.

The Court will assume for purposes of initial review that the allegedly abhorrent conditions in the dry cell "were sufficiently serious to constitute objective deprivations of the right to due process," in satisfaction of the objective element. *Id.* at 29. Thus, like the claim above, this claim turns on the subjective element—whether any "defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to" the plaintiff. *Id.* at 35.

The complaint is silent as who placed the plaintiff in the dry cell or why they placed her there such that the Court could infer that any defendant "intentionally imposed the alleged condition." *Id.* But Plaintiff alleges that, once in the dry cell, she complained of her conditions to the warden, captain, and deputy wardens when they were touring the unit. Compl., ECF No. 1 ¶ 11. The warden told the plaintiff that she would think about letting the plaintiff out, but she instead extended the plaintiff's stay in the dry cell. *Id.* These allegations, while thin, are sufficient to suggest that prison officials "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to" the plaintiff, *Darnell*, 849 F.3d at 35, in satisfaction of the subjective element. *See Devalda v. Faucher*, No. 3:21-CV-1274(OAW), 2022 WL 356427, at *2, 5 (D. Conn. Feb. 7, 2022) (subjective element satisfied where plaintiff informed warden of

"unsanitary and unhealthy conditions as well as his need for medical treatment," but warden "ignored his requests"). Thus, the plaintiff may pursue her Fourteenth Amendment conditions-of-confinement claim against Warden Trina Sexton and Captain Brent Fitzgerald, the only wardens or captains named as defendants in the complaint. *See* Compl., ECF No. 1 at 3.

III.    <u>**Motion to Appoint Counsel**</u>

The plaintiff has also filed a motion to appoint counsel. ECF No. 4. The Second Circuit has cautioned district courts against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173–74 (2d Cir. 1989). Thus, in considering whether to appoint pro bono counsel for an indigent litigant, the Court must "first determine whether the indigent's position seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *see also Cooper*, 877 F.2d at 171 ("[C]ounsel is often unwarranted where the [litigant's] chances of success are extremely slim."). If the claims are sufficiently meritorious, the Court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *See Hodge*, 802 F.2d at 61–62. At this early state of litigation, it is not clear that the plaintiff's claims are of sufficient merit to warrant an appointment of counsel. Thus, the Court must **DENY** Plaintiff's motion, ECF No. 4, but without prejudice to filing another motion for appointment of counsel at a later time.

IV.    <u>**Conclusion**</u>

The plaintiff may seek damages from correctional officers Mercado, Francis, and Howe in their individual capacities on the Fourteenth Amendment excessive force and failure to

intervene claims. The plaintiff may also seek damages from Warden Sexton and Captain Fitzgerald in their individual capacities on the Fourteenth Amendment conditions of confinement claim. All other claims are dismissed, and all other defendants are terminated.

The Court enters the following additional orders.

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for Mercado, Francis, Howe, Sexton, and Fitzgerald, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendants in their individual capacities and the defendants shall be required to pay the cost of such service.

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6)    All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)    If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9)    The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 3rd day of November 2025 at Hartford, Connecticut.

_____/s/_____

Michael P. Shea
United States District Judge
